Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 3278 | DATE | 9/27/2002 |
| CASE TITLE | Hawkeye-Security Ins. Co. v. Bob Propheter Constr., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motions for Summary Judgment pursuant to Fed. R. Civ. P. 56

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, this Court this Court GRANTS Hawkeye's motion for summary judgment on Count III of its complaint [20-1], and dismisses as moot Counts I, II, and IV. Propheter's and Olson's cross motion for summary judgment is DENIED in its entirety [17-1], and its counter-claim is dismissed with prejudice. This action is closed.

/s/ David H. Coar

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 3 0 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | | 31 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mds(lc) | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| HAWKEYE-SECURITY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) No. 01 C 3278 ) ) HONORABLE DAVID H. COAR |
| v. | ) ) |
| BOB PROPHETER CONSTRUCTION, L.L.C, a/k/a PROPHETER CONSTRUCTION EQUIPMENT, INC. and KAREN OLSON | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Hawkeye-Security Insurance Company ("Hawkeye") filed this action for declaratory judgment seeking a declaration that it owes no defense or indemnity to its insured, Propheter Construction ("Propheter"), in connection with certain Title VII discrimination claims made against Propheter by its former employee, Karen Olson ("Olson"). Propheter in turn filed a counter-claim against Hawkeye for its alleged failure to defend Propheter in the Olson lawsuit in breach of the insurance contract. Before this Court is Hawkeye's motion for summary judgment on Count III. Simultaneously before this Court is Propheter and Olson's cross motion for summary judgment. For the reasons stated below, this Court GRANTS Hawkeye's motion for summary judgment as to Count III, and DENIES Propheter and Olson's motion for summary judgment in its entirety.

## I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Commercial Underwriters Ins. Co. v. Aires Environmental Servs., Ltd., 259 F.3d 792, 795 (7th Cir. 2001). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998).

The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P 56(e); Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001). To oppose the motion for summary judgment successfully, the non-movant cannot rest on the pleadings alone, but must designate *specific facts* in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992). A scintilla of evidence in support of the non-movant's position is insufficient,

and the non-movant "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511. Weighing evidence, determining credibility, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. Anderson, 477 U.S. at 255, 106 S. Ct. at 2515.

On cross-motions for summary judgment, each movant individually must satisfy the requirements of Rule 56. Great West Cas. Co. v. Rogers Cartage Co., No. 00 C 6621, 2001 WL 1607608, at *1 (N.D. Ill. 2001); Proviso Ass'n of Retarded Citizens v. Village of Westchester, 914 F. Supp. 1555, 1560 (N.D. Ill. 1996). Thus, the traditional standards for summary judgment still apply even though both parties have moved for summary judgment. Blum v. Fisher and Fisher, Attorneys at Law, 961 F. Supp. 1218, 1222 (N.D. Ill. 1997). This Court considers the merits of each cross-motion separately and draws all reasonable inferences and resolves all factual uncertainties against the party whose motion is under consideration. O'Regan v. Arbitration Forums, Inc., 246 F.2d 975, 983 (7th Cir. 2001). This "Janus-like perspective . . . sometimes forces the denial of both motions," but only where there are material facts in dispute. Buttitta v. City of Chicago, 803 F. Supp. 213, 217 (N.D. Ill. 1992).

## II. Background

The following facts are taken from the parties' Local Rule 56.1(a)(3) and (b)(3) Statement of Material Facts. Hawkeye is an Iowa insurance company with its principal place of business in Des Moines, Iowa. Propheter is an Illinois limited liability company with its principal place of business in Sterling, Illinois. Olson is an individual citizen of Montgomery, Illinois and previous employee of Propheter. Hawkeye issued a primary comprehensive general

liability policy to Propheter with an effective policy period of March 31, 1999 to March 31, 2000. Hawkeye also issued a commercial umbrella policy to Propheter with an effective policy period of March 31, 1999 to March 31, 2000.

On or about May 19, 2000, Olson filed a First Amended Complaint against Propheter in the United States District Court for the Northern District of Illinois, Eastern Division, captioned Karen Olson v. Bob Propheter Construction, L.L.C., No. 00 C 0839. The Olson complaint was a Title VII discrimination and retaliation claim in which Olson alleged that Propheter discriminated against her by failing to provide her with proper bathroom facilities on a road construction site thereby causing her to rupture her bladder. Olson alleges Propheter then fired her in retaliation for exercising her rights. Propheter tendered the Olson claim to its insurance broker at Hawkeye by a letter dated September 20, 2000. In a letter dated October 24, 2000, Hawkeye advised Propheter that it was undertaking an evaluation of coverage and that, in the meantime, Propheter should arrange for its own defense in the Olson lawsuit. By letter dated February 6, 2001, Hawkeye denied coverage to Propheter based upon the employee exclusions in the Hawkeye policies.

On May 4, 2001, Hawkeye filed the instant declaratory action. In particular, Count III seeks a declaration that Hawkeye owes no defense or indemnity to Propheter in connection with the Olson lawsuit based on the application of the employee exclusion and the employment related practices exclusion endorsements in the primary and umbrella policies. Hawkeye's primary commercial policy provides in part:

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

* * *

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply.

Hawkeye's umbrella policy provides in pertinent part:

SECTION I - COVERAGE

1. **Insuring Agreement**

We will pay "loss" in excess of the "primary limit" as listed in the Schedule of Primary Insurance or the "retained limit" ) if not covered by "primary" but otherwise covered by this policy) because of

Coverage A - "Bodily Injury"
Coverage B - "Property Damage"
Coverage C - "Personal Injury"
Coverage D - "Advertising Injury"

Caused by an "occurrence" to which this policy applies and such injury or damage happening anywhere during the policy period.

Hawkeye's primary policy includes the following Exclusion under Coverage A:

2. **Exclusions**

This insurance does not apply to:

(e) Employer's Liability
"Bodily injury" to:
(1) An "employee" of the insured arising out of and in the course of:
    (a) Employment by the insured; or
    (b) Performing duties related to the conduct of the insured's business; or
(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1), above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an insured contract.

Hawkeye's primary policy includes an endorsement that states the following:

### EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Section paragraph 2., Exclusions of Section I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

This insurance does not apply to:

"Bodily injury" to:
(1) A person arising out of any
    (a) Refusal to employ that person;
    (b) Termination of that person's employment; or
    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

-6-

This exclusion applies:

    (1) Whether the insured may be liable as an employer or in any other capacity; and
    (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Section paragraph 2., Exclusions of Section I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:

This insurance does not apply to: "Personal Injury" to:

    (1) A person arising out of any
        (a) Refusal to employ that person;
        (b) Termination of that person's employment; or
        (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

This exclusion applies:

    (1) Whether the insured may be liable as an employer or in any other capacity; and
    (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Hawkeye's umbrella policy includes the following Exclusion:

3. This policy does not apply to:

    a. Any obligation an insured may have under a workers compensation, disability benefits or unemployment compensation law, or any similar law;

    b. "Bodily injury" to:
        (1) (a) An employee of the insured arising out of and in the course of employment by the insured; or
            (b) The spouse, parent, child, brother or sister of that employee as a consequence of (a) above
        (2) This exclusion applies:
            (a) Whether the insured may be liable as an employer or in any other capacity; and

> (b) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Hawkeye's umbrella policy includes an endorsement that contains the following language:

**EMPLOYMENT-RELATED PRACTICES EXCLUSION**

Exclusion 13. of SECTION III - Exclusion of the Commercial Umbrella Liability Policy Coverage Form is replaced by the following:

> 13. This policy does not apply to "bodily injury" or "personal injury" arising out of employment practices of the Insured, including:
>     (a) Refusal to employ;
>     (b) Termination of employment;
>     (c) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or
>     (d) Consequential "bodily injury" or "personal injury" as a result of a. through c. above.
>
> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

In or about June 2001, Olson entered into a settlement of the <u>Olson</u> lawsuit with Propheter, for $1,000,000 in which Propheter paid Olson a portion of that amount and assigned its rights under the Hawkeye insurance policy to Olson to recover, if any, the remaining portion of the settlement amount from Hawkeye.[1]

### III. Discussion

At issue in this case is whether Hawkeye had a duty to defend and/or indemnify Propheter in connection with the <u>Olson</u> discrimination claim. Hawkeye moves for summary judgment on Count III of its complaint, which seeks declaration that Hawkeye owed no defense or indemnity

---

[1] The settlement terms are confidential and have been submitted to this Court under seal.

-8-

to Propheter.[2] Propheter and Olson filed a cross motion for summary judgment, arguing that, because there was potential for coverage in the Amended Complaint, Hawkeye had a duty to defend Propheter and that Hawkeye therefore repudiated the insurance contract by refusing to defend and is estopped from asserting favorable policy provisions.

As a federal court sitting in diversity jurisdiction, this Court applies state substantive law and federal procedural law. See Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001) citing Erie v. Tompkins, 304 U.S. 64, 78 (1938). The parties agree that Illinois law applies. Under Illinois law, an insurer's duty to defend the insured in a third-party suit is broader than its duty to indemnify. Outboard Marine Corp. v. Liberty Mutual Ins. Co., 607 N.E.2d 1204, 1212-1213 (Ill. 1992). Further, to determine whether an insurer has a duty to defend its insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy; if the facts alleged fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. Id. Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage. Id.; see also Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co., 260 F.3d 742, 745 (7th Cir. 2001).

Construing the provisions of an insurance policy is a matter of law. Outboard Marine Corp., 607 N.E.2d at 1212. In construing an insurance policy, the court must ascertain the intent of the parties to the contract by construing the policy as a whole while giving due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract. Id.

---

[2] Judgment in Hawkeye's favor on Count III will moot the issues raised by Counts I, II, and IV of its complaint, which seek declarations that Propheter had no duty to defend based on other provisions of the policies.

When possible, the court should construe the contract so that all provisions are given effect and are in harmony, making them consistent and workable, and courts should interpret the contracts as complete documents rather than isolated parts. Knoll Pharm. Co. v. Automobile Ins. Co. of Hartford, 210 F. Supp. 2d 1017, 1022 (N.D. Ill. 2002); Welborn v. Ill. Nat'l Cas. Co., 106 N.E.2d 142, 143 (1952). When the words of the policy are unambiguous, they are afforded their plain, ordinary and popular meaning. Weiss v. Bituminous Cas. Corp., 319 N.E.2d 491, 495 (Ill. 1994); Outboard Marine Corp., 607 N.E.2d at 1217. If the words are susceptible to more than one interpretation, however, they are ambiguous and are to be construed in favor of the insured and against the insurer. Outboard Marine Corp., 607 N.E.2d at 1217; see also Employers Ins. of Wausau v. James McHugh Constr. Co., 144 F.3d 1097, 1104 (7th Cir. 1998). With these principles in mind, this Court turns to the parties' contentions.

*The Plain Language of the Insurance Policies*

The primary and umbrella policies at issue in this case are commercial general liability policies. Hawkeye contends that it owed no defense or indemnity to Propheter in connection with the Olson lawsuit because that suit arose out of a claim by an employee of Propheter and such a claim is expressly excluded from coverage under the terms of the Hawkeye policies. Specifically, Hawkeye points to the "employee" exclusions contained within the body of the primary and umbrella policies and to the "Employment-Related Practices Exclusion" endorsements that were added to both policies to expand on the original exclusions. The primary policy contains the following exclusions:

2. **Exclusions**

This insurance does not apply to:

  (e) Employer's Liability
    "Bodily injury" to:
(1) An "employee" of the insured arising out of and in the course of:
    (a) Employment by the insured; or
    (b) Performing duties related to the conduct of the insured's business; or . . .

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

The primary policy also contains the following endorsement expanding on its exclusions:

### EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

 A. The following exclusion is added to Section paragraph 2., Exclusions of Section I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

This insurance does not apply to:

"Bodily injury" to:

  (1) A person arising out of any
    (a) Refusal to employ that person;
    (b) Termination of that person's employment; or
    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

This exclusion applies:

  (1) Whether the insured may be liable as an employer or in any other capacity; and
  (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B.  The following exclusion is added to Section paragraph 2., Exclusions of Section I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:

This insurance does not apply to: "Personal Injury" to:

(1)  A person arising out of any
   (a)  Refusal to employ that person;
   (b)  Termination of that person's employment; or
   (c)  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

This exclusion applies:

(1)  Whether the insured may be liable as an employer or in any other capacity; and
(2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Similarly, the umbrella policy contains the following exclusion and endorsement:

3.  This policy does not apply to:
   a.  Any obligation an insured may have under a workers compensation, disability benefits or unemployment compensation law, or any similar law;
   b.  "Bodily injury" to:
      (1)  (a)  An employee of the insured arising out of and in the course of employment by the insured; or . . .
      (2)  This exclusion applies:
         (a)  Whether the insured may be liable as an employer or in any other capacity; and
         (b)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

### EMPLOYMENT-RELATED PRACTICES EXCLUSION

Exclusion 13. of SECTION III - Exclusion of the Commercial Umbrella Liability Policy Coverage Form is replaced by the following:

13.  This policy does not apply to "bodily injury" or "personal injury" arising out of employment practices of the Insured, including:
   (a)  Refusal to employ;
   (b)  Termination of employment;

-12-

(c) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or
(d) Consequential "bodily injury" or "personal injury" as a result of a. through c. above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

*Olson's Title VII Claim*

Hawkeye argues that a cursory examination of the underlying Olson complaint reveals Olson's Title VII discrimination and retaliation claims are excluded from coverage under both the primary and umbrella insurance policies. Propheter and Olson argue that Hawkeye fails to establish that the employee exclusion in the body of the primary policy applies because sexual discrimination does not "arise out of" employment. This Court, however, need not reach the question of whether the employee exclusion applies to Olson's discrimination claim because as Hawkeye points out, the Employment-Related Practices Endorsements to both the primary and umbrella policies unambiguously exclude coverage of discrimination suits like Olson's. See, e.g., Dobbs v. State Farm Fire and Cas. Co., 773 N.E.2d 1251, 1254 (Ill. App. 2002) (holding that insurer did not have a duty to defend on a gender discrimination claim where the commercial umbrella policy contained a fire endorsement that very specifically deleted personal injury coverage for discrimination).

Despite this unambiguous language, Propheter and Olson argue that Hawkeye had a duty to defend because the Olson complaint alleged facts within or potentially within policy coverage. Namely, they argue that, under a different endorsement to the insurance policy, Hawkeye agreed

-13-

to defend Propheter if a suit sought both compensatory and punitive damages against it. The Punitive or Exemplary Damages Exclusion Endorsement states:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION ENDORSEMENT**

Regardless of any other provision of this policy, this policy does not apply to punitive or exemplary damages. *We will, however, provide defense for such action when suit involves both compensatory and punitive or exemplary damages.*

(Emphasis added by Propheter and Olson). Since the Olson complaint sought compensatory and punitive damages, they argue that Hawkeye had a duty to defend Propheter. Propheter and Olson rely heavily on the form statement that appears on all of Hawkeye's endorsements to the policies, **"THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY"**, and essentially argue that this endorsement wipes out all other limitations on coverage in the policies. This argument, however, is unpersuasive.

While a court liberally interprets insurance policy provisions that limit or exclude coverage in favor of the insured, it may not read an ambiguity into a policy to provide coverage for the insured; rather, an ambiguity exists only if the insurance policy is susceptible to reasonable alternate interpretations. First Ins. Funding Corp. v. Fed. Ins. Co., 284 F.3d 799, 804 (7th Cir. 2002). Here, Propheter and Olson's interpretation is not reasonable. They attempt to use an exclusion endorsement to expand coverage beyond the basic grant of coverage set forth in the coverage agreement, which it cannot do. See Continental Cas. Co. v. Pittsburgh Corning Corp., 917 F.2d 297, 300 (7th Cir. 1990) (holding that an exclusion in an insurance policy cannot create coverage); Qualls v. Country Mut. Ins. Co., 462 N.E.2d 1288, 1291 (Ill. App. 1984) (holding that an exception to an exclusion should not be interpreted as granting coverage or

-14-

providing an additional basis for coverage); Ludwig Candy Co. v. Iowa Nat'l Mut. Ins. Co., 396 N.E.2d 1329 (Ill. App. 1979) (holding that an exclusion in an insurance policy only has relevance when coverage is otherwise established); see also Hartford Accident and Indemnity Co. v. Chicago Housing Authority, 12 F3d 92 (7th Cir. 1993) (discussing the general rule that clauses of limitation in insurance policies do not obligate insurers to pay). Thus, this Court will not read the Punitive or Exemplary Damages Exclusion Endorsement to provide coverage of Olson's otherwise excluded discrimination claim.

Propheter and Olson's argument that, under the umbrella policy, Hawkeye agreed to defend Propheter even if the primary policy did not provide coverage is similarly unpersuasive. The Hawkeye umbrella policy contains the same exclusion of discrimination claims as does the primary policy. While the umbrella may provide some coverage that the primary policy does not provide, it is clear and unambiguous that Olson's discrimination claim is not one of those claims.[3]

Finally, Propheter and Olson argue that Hawkeye is estopped from asserting favorable policy provisions because it repudiated the contract in refusing to defend Propheter in the Olson suit. Estoppel, however, arises at the moment the insurance company wrongfully refuses to defend, and an insurer's refusal to defend is wrongful if the allegations in the underlying lawsuit are even potentially within the scope of the policy. Maneikis v. St. Paul Ins. Co. of Ill., 655 F.2d

---

[3] In their response brief to Hawkeye's motion for summary judgment, Olson and Propheter assert for the first time that there was potential coverage for the Olson discrimination claim under the Employee Benefits Liability Coverage Endorsement attached to the Hawkeye policy. As this endorsement provides limited coverage for "errors" in the "administration" of an "Employee Benefit Program," which does not apply to Olson's Title VII discrimination claim, it does not apply.

818, 822 (7th Cir. 1981). Because this Court finds that it was clear from the face of the Olson complaint that the case did not fall within potential policy coverage, Hawkeye did not wrongfully refuse to defend Propheter and it is therefore not estopped from enforcing its exclusion provisions. Summary judgment is granted in favor of Hawkeye on all claims.

## IV. Conclusion

For the foregoing reasons, this Court GRANTS Hawkeye's motion for summary judgment on Count III of its complaint, and dismisses as moot Counts I, II, and IV. Propheter's and Olson's cross motion for summary judgment is DENIED in its entirety, and its counter-claim is dismissed with prejudice. This action is closed.

Enter:

_David H. Coar_

**David H. Coar**

**United States District Judge**

Dated: September 27, 2002